UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT MICHAEL BEAR,

       Plaintiff,

v.                                                                    Case No. 5:16cv291-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

       Defendant.

_____/

## MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Robert Michael Bear's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial

---

[1] Nancy A. Berryhill succeeded Carolyn W. Colvin as acting Commissioner of Social Security and is automatically substituted for Colvin as the defendant. Fed. R. Civ. P. 25(d).

evidence.  The decision of the Commissioner, therefore, will be affirmed and the application for DIB will be denied.

## ISSUES ON REVIEW

Mr. Bear, who will be referred to as claimant, plaintiff, or by name, claims the Administrative Law Judge ("ALJ") erred by: (1) finding Mr. Bear did not have a medically determinable severe left shoulder impairment before the date last insured ("DLI"); (2) failing to properly weigh the Florida Department of Education ("DOE's") determination Mr. Bear was not a suitable candidate for vocational rehabilitation ("VR") due to his severe physical impairments and limited education; and (3) erroneously evaluating Mr. Bear's credibility and testimony regarding his symptoms.  (Doc. 18).

## PROCEDURAL HISTORY

On October 11, 2012, Mr. Bear filed an application for DIB, claiming disability beginning October 1, 2006, due to a rotator cuff tear, degenerative disc disease, herniated disc, and heat stroke.  T. 173, 177.[2]  The Commissioner denied the application initially and on reconsideration.  T. 100-04, 106-10.  The ALJ conducted a hearing on July 24, 2014, and plaintiff amended the alleged disability onset date to the same day as the DLI, December 31, 2011.  T. 50-83.  After the

---

[2] The administrative record filed by the Commissioner consists of 7 volumes (docs. 11-2 through 11-7, and doc. 13-2) and has 335 pages.  References to the record will be by "T.," for transcript, followed by the page number.

hearing, the ALJ found claimant not disabled under the Act.  T. 34-49.  The Appeals Council denied the request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-7.  The determination of the Commissioner is now before the court for review.

<u>FINDINGS OF THE ALJ</u>

In the written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

• Mr. Bear last met the insured status requirements of the Act on December 31, 2011.  T. 39.

• Through the DLI, Mr. Bear had the following severe impairments: cervical and lumbar degenerative disc disease and right shoulder degenerative joint disease.  T. 39.

• Through the DLI, Mr. Bear had the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b). T. 41.

• Through the DLI, considering Mr. Bear's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy claimant could have performed.  T. 44.

• Mr. Bear was not under a disability, as defined in the Act, at any time from December 31, 2011, the amended alleged onset date, through December 31, 2011, the DLI. T. 44-45.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the

[Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).  The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)(4), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[3]

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national

---

[3] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

economy that accommodates the claimant's RFC and vocational factors, he is not disabled.

FACT BACKGROUND AND MEDICAL HISTORY[4]

Mr. Bear offered testimony as to his health, daily activities, and work history at the July 2014 hearing before the ALJ.  T. 50-83.  He was born on April 26, 1960, and has a ninth-grade education.  T. 77, 84.  In 1982, he required surgery after suffering a broken left clavicle and wrist in a motorcycle accident.  T. 61, 73, 294. In 2008, Mr. Bear had surgery on his right shoulder.  T. 307-08.

Plaintiff worked as a welder and framer for a mobile home park from 1991 to 2006, sometimes lifting over 100 pounds.  T. 178-79.  Despite originally identifying October 1, 2006, as the disability onset date, Mr. Bear admitted he continued to work constructing houses until 2011.  T. 56-57, 173.  Claimant's attorney subsequently amended the disability onset date to the same day as the DLI, December 31, 2011. T. 57.

Mr. Bear's "memory is not good" because of a heat stroke.  T. 55, 65.  He also has trouble lifting things and cannot lift "over five or six pounds probably."  T. 68. If he tries to lift over five or six pounds it "pulls out [his] shoulders and [his] neck

---

[4] The recitation of the medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  The facts below, where not derived from the medical records, are based largely, if not entirely, on plaintiff's testimony in that regard.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

and everything goes numb." T. 76. Mr. Bear could not lift up to ten pounds for five hours a day because he would "be so sore [he] couldn't do it" due to pain in his shoulders, neck, and arms. T. 77.

The shoulder pain Mr. Bear experiences radiates down both arms. T. 77. Although claimant's legs "just don't work no more" because "[he] banged them up," he is not being treated for leg problems. T. 78. In a typical day, Mr. Bear sits around and watches television. T. 69. When he cannot sit any longer, he gets up, goes outside, and walks around. T. 69. Mr. Bear is also able to help his wife with housework "like doing laundry or something like that or dishes or something like that."[5] T. 69.

On June 19, 2011, claimant was admitted to Bay Medical Center for a heat stroke suffered while weed-eating. T. 263-84. Dr. John Yannucci, the examining physician, observed Mr. Bear to be awake and alert with unremarkable cardiovascular, gastrointestinal, psychiatric, and respiratory findings. T. 265. Claimant reported no left shoulder problems and Dr. Yannucci observed full range of motion in the musculoskeletal system. T. 267. Diagnostic testing ordered by Dr. Yannucci, including an x-ray of the right shoulder, a chest x-ray, a CT of the head, carotid ultrasound, echocardiogram, and MRI of the brain revealed no significant

---

[5] Whether plaintiff testified he retained the ability to help with chores or could do so only in the past is not clear from the hearing testimony.

abnormalities.  T. 263.  A CT scan of the cervical spine "revealed degenerative joint disease with disk bulge at C4-C5 with a 9-mm central canal stenosis and minimal bilateral foraminal stenosis at C4-C5 and C6-C7."  T. 263.  At discharge, claimant "was asymptomatic" and "[a]ll medical issues were resolved."  T. 263-64.

On May 9, 2012, plaintiff returned to the Bay Medical Center emergency room complaining of left shoulder pain for 2 weeks following a fall.  T. 326, 331. X-rays showed an "old distal left clavicle fracture with nonunion and fracture fragments."  T. 331.  Dr. Robert S. Bain noted "[r]emote posttraumatic changes" but "no acute fracture."  T. 331.  A physical examination revealed "full range of motion in all extremities."  T. 327.

On September 14, 2012, Mr. Bear was referred to Dr. Steven W. Malik from VR services.  T. 294.  Dr. Malik assessed "[l]eft shoulder pain of long duration."  T. 294-95.  Dr. Malik's treatment records from September 28, 2012, show Mr. Bear stated his left shoulder problem "started gradually without injury" with an onset date approximately six months earlier.  T. 291.  An MRI from September, 26, 2012, showed "acromioclavicular joint hypertrophy likely due to post traumatic osteoarthritis," "deformity at the AC joint," and "a fragment of the acromion which is either an os acromiale or an unfused fracture."  T. 310.

Peggy E. Wiggin, a counselor with the Florida DOE, evaluated plaintiff's suitability for VR services in concert with Dr. Joseph Grace, a retired orthopedic

surgeon. In an October 10, 2012, letter Ms. Wiggin indicated Dr. Grace "stated Mr. Bear would require at least 5 (five) years of surgeries and rehabilitation to help lessen his work impediments, and if (and he said it was a very big IF) each surgery produced the maximum best results, then Mr. Bear would still not be able to return to his previous employment" as a framer and welder. T. 230. Dr. Grace based his opinion on plaintiff's diagnoses of degenerative disc disease in both the cervical and lumbar areas of his spine with osteophyte complexes at several levels in the cervical area, spinal canal stenosis of 9 mm, "complete rupture of rotator cuff bilateral," and a disc extrusion. T. 230, 232.

Although Ms. Wiggin noted claimant could be retrained for other work after the surgeries, she believed, based on claimant's age and education, he "would be close to retirement age before he obtained his GED and finished with a retraining program." T. 231. Ms. Wiggin stated: "[I]n both Dr. Grace's medical opinion and in [her] professional opinion as a Certified Vocational Rehabilitation Counselor, it is highly unlikely that Vocational Rehabilitation would be able to return Mr. Bear to productive employment, even if requested services are provided[.]" T. 231. Thus, Ms. Wiggin "believe[d] that [claimant] is permanently and totally disabled." T.231.

## ANALYSIS

### I.     Left Shoulder Impairment

Claimant first argues "[t]he ALJ erroneously found that Mr. Bear did not have a medically determinable severe left shoulder impairment prior to his DLI."  (Doc. 18, p. 4).  At step two of the sequential analysis, 20 C.F.R. § 404.1520(a)-(g), the ALJ must determine whether the claimant has a severe impairment keeping him from performing past work.  *See* 20 C.F.R. § 404.1520(c).  The burden at this step is on the claimant.  *See Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

The step two severity determination is a threshold inquiry used to screen out "trivial" claims, meaning an impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  The Eleventh Circuit, emphasizing the threshold nature of the step two finding, observed the proper standard "allows only claims based upon the most trivial impairments to be rejected."  *McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986)*.*  Accordingly, "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working."  *Stratton v. Bowen*, 827 F.2d 1447, 1452 n.9 (11th Cir. 1987) (*quoting Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir. 1985)).

Plaintiff argues medical records from 2012 establish he had a severe left shoulder impairment predating the DLI. X-Rays from May 9, 2012, showed an "old distal left clavicle fracture with nonunion and fracture fragments." T. 331. Dr. Bain noted "[r]emote posttraumatic changes" but no identifiable acute fracture. T. 331. The self-reported cause of Mr. Bear's left shoulder pain, however, was a fall which occurred only two weeks before the emergency room visit. T. 315. Thus, left shoulder pain was first documented in the medical records over four months after the DLI and claimant said it was due to a fall only two weeks before. T. 315. Contrary to plaintiff's assertion on this point, x-ray evidence of an old fracture by itself does not establish plaintiff experienced any pain or limitations from the left shoulder before the DLI. *See Hutchinson v. Astrue*, 408 F. App'x 324, 326 (11th Cir. 2011) ("proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work"); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

Other medical evidence does not support the existence of a severe left shoulder impairment before the DLI. A physical examination performed on May 9 showed full range of motion in all extremities. T. 316. The ALJ noted the May 9, 2012, emergency room records also indicate Bear was employed as a full time

welder at the time of the visit.  T 324.  Plaintiff argues "notations on the same page indicate that other information there was last updated in 2011, and there is no narrative statement to indicate that Mr. Bear actually reported this information to hospital personnel in May of 2012, as found by the ALJ."  (Doc. 18, p. 6).  The ALJ's interpretation of this evidence, however, is reasonable in light of the deference given to the ALJ's findings of fact.[6]  *See Hunter*, 808 F.3d at 822.

Plaintiff also argues Dr. Malik's September 2012 records show the left shoulder pain predated the DLI.  On September 14, Dr. Malik assessed "[l]eft shoulder pain of long duration."  T. 294-95.  This vague phrase, however, does not show Malik believed the pain started before the DLI because "long duration" is not defined or limited by the doctor.  T. 294-95.  In fact, on September 28, claimant told Dr. Malik the left shoulder pain had an onset date approximately 6 months earlier, or 3 months after the DLI.  T. 291.  This evidence is consistent with the aforementioned May 9, 2012, medical records, which show the genesis of the left shoulder pain was a fall that occurred several months after the DLI.[7]  T. 315.  Severe

---

[6] Assuming plaintiff was not a full time welder in 2012, the ALJ's decision is still supported by substantial evidence in light of the record as a whole.

[7] At the hearing, plaintiff's counsel suggested claimant's left shoulder pain could have been present since his motorcycle accident in 1982.  T. 61.  As the ALJ noted, however, Mr. Bear worked for over twenty years after the motorcycle wreck as a framer and welder, professions classified at the medium and heavy exertion levels by the Social Security administration.  T. 41, 81, 179, 186-87.

impairments are a flame that must be kindled before the DLI and cannot trace to a post-DLI injury like Mr. Bear's fall.

The strength of Mr. Bear's argument for reversal on this point is further diminished by the ALJ's finding of multiple severe impairments at step two of the sequential evaluation process. T. 39. Because step two requires only that the ALJ find at least one severe impairment to proceed to the next evaluative step, any additional consideration given to plaintiff's left shoulder pain as a severe impairment, standing alone, would have been unnecessary in this instance. *See* 20 C.F.R. § 404.1520(a)(4)(ii); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("'[T]he finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe' is enough to satisfy step two.") (*quoting Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Mr. Bear responds the left shoulder pain, in conjunction with his other impairments, so diminishes his RFC as to make him capable of performing no more than sedentary work, a finding Mr. Bear asserts would have resulted in a ruling of disability pursuant to the Medical-Vocational Guidelines. But here, having reached the fifth step in the sequential evaluation, the ALJ recorded and considered the symptoms of which Mr. Bear complains. T. 41-43.

Plaintiff failed to establish his left shoulder pain constituted a severe impairment before the DLI.  Nor is there evidence from before the DLI that the left shoulder pain caused any limitations not accounted for in the ALJ's RFC determination.  Plaintiff, therefore, has not shown the ALJ committed reversible error.

II.      Department of Education's ("DOE's") Determination

Claimant argues "[t]he ALJ erroneously gave 'less-than-significant weight' to the [Florida] DOE's determination that Mr. Bear was not a suitable candidate for vocational rehabilitation due to his severe physical impairments and limited education."  (Doc. 18, p. 8).  The ALJ discounted the DOE determination because (1) "there is no evidence that the DOE medical consultant examined the claimant or even reviewed his medical records"; and (2) whether "the claimant was determined to be not a good candidate for VR is a different issue than whether he is disabled under the Social Security Act."  T. 43.

Mr. Bear faults the ALJ for finding "no evidence that the DOE medical consultant examined the claimant or even reviewed his medical records."  T. 43.  Plaintiff, however, identified no contrary evidence in the record as to indicate Dr. Grace examined claimant or reviewed his medical records, aside from reading the diagnoses contained in Ms. Wiggins' letter.  T. 230.  Moreover, Dr. Grace's entire

first hand opinion of Mr. Bear's condition is a single handwritten clause: "Recommend proceed with application to disability."  T. 232.

Claimant also failed to show the DOE and the Social Security standards are similar enough to make the DOE evaluation relevant to the ALJ's decision.  The DOE letter suggested Bear would need to earn a GED before becoming employable. *See* Fla. Admin. Code Ann. r. 6A-25.005 (4)(a) (requiring DOE to address applicant's barriers to employment).  T. 230.  In contrast, the Social Security rule utilized for disability determination, Medical-Vocational Rule 202.11, requires only a "[l]imited or less" education level to be deemed employable considering Bear's age and RFC.  "Limited or less" is defined by 20 CFR § 404.1564 as a seventh through eleventh grade formal education.  In short, unlike the DOE's evaluation, Social Security law does not necessarily require Mr. Bear to obtain a GED to be deemed employable.  *See* Medical-Vocational Rule 202.11.  One can glean the asymmetry between the two standards from the differing educational requirements alone, notwithstanding other variables, and claimant failed to show the DOE evaluation is relevant, much less entitled to great weight, in a disability determination under Social Security law.  Plaintiff, therefore, has not established the ALJ erred by assigning the DOE letter less than significant weight.  *See Hood v. Comm'r of Soc. Sec.*, No. 6:08-CV-663-ORL-DAB, 2009 WL 2460762, at *6 (M.D. Fla. Aug. 10, 2009) ("These vocational evaluators were employed by the Florida

Department of Education to assist Plaintiff in vocational rehabilitation given his past skills and experience; they are not responsible for determining whether he is disabled under the social security regulations of performing his past relevant work or other work in the national economy, which is the ALJ's responsibility. [Their] opinions had no bearing on the ALJ's decision and he need not give their opinions any weight.").

Bear not only failed to reconcile the difference in standards, he also failed to address the timing of the DOE evaluation, which was completed in October 2012, over 9 months after the DLI. T. 230-31. Nothing in the October 2012 letter suggests the evaluation would be helpful in resolving the Social Security disability issue as of December 31, 2011.

III.    Mr. Bear's Credibility

Mr. Bear argues the ALJ erroneously evaluated his credibility and testimony regarding his symptoms. Pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides, in part, the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show there is a medical condition which could be reasonably expected to produce these symptoms." The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand* test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test,

showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210 (11th Cir. 1991). The Eleventh Circuit has held "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (*citing Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor which can be considered. *See Marbury*, 957 F.2d at 839-840; *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding the ALJ

must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[8]

Here, the ALJ decided the "objective medical evidence generally supports the locations but not the duration, frequency, and intensity of the claimant's reported symptoms." T. 43.  The ALJ also stated "the claimant's statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely credible" and "[n]othing in the medical records after the date last insured relates back to establish disability as of the date last insured." T. 42-43.

Bear argues "a claimant's statements about his symptoms may not be disregarded solely because they are not supported by objective medical evidence, under both SSR 96-7p and SSR 16-3p."[9]  An ALJ, however, may consider objective medical evidence to help draw conclusions regarding a plaintiff's subjective account of his symptoms.  *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity

_____

[8] **Error! Main Document Only.**In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[9] On March 16, 2016, the Commissioner enacted SSR 16-3p which expunged the word "credibility" from SSR 96-7p to clarify that ALJs are not to examine an individual's character during a subjective symptom evaluation.  Bear notes, however, "SSR 16-3p is intended to more clearly articulate, rather than change, what the regulations have required throughout the time period at issue in this case."  The rule change did not have a substantive effect.

and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

Claimant had minimal treatment for his alleged disabling conditions before the DLI and never complained of left shoulder pain before the DLI. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) ("When evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints.") (*citing* S.S.R. 96-7p at *7).  The ALJ correctly observed plaintiff's contemporaneous descriptions of his medical condition—for example, no complaints of left shoulder pain—should be given more credence than the hearing testimony.  In fact, claimant's statements are not only unsupported by objective medical evidence; the statements are directly refuted by the objective medical evidence.

Mr. Bear claims he became disabled on December 31, 2011.  T. 57.  The June 2011 heat stroke is the only identified medical event recorded between claimant being capable of the heavy exertion needed to frame houses in early 2011 and the alleged disability onset date, mere months later.  T. 81, 263-84.  But Dr. Yannucci, the examining physician for the heat stroke, conducted cardiovascular, gastrointestinal, psychiatric, and respiratory examinations with normal results and claimant reported no left shoulder impairment.  Dr. Yannucci examined claimant's

musculoskeletal system and found a full range of motion.  T. 265-67.  The medical records from June 2011 do not support claimant's allegations of disabling symptoms. And nothing indicates claimant became disabled between June 2011 and the December 31, 2011, DLI.

Claimant asserts the ALJ erroneously based the credibility decision in part on "emergency department records from 2012 show[ing] that he was a fulltime welder." Bear argues "notations on the same page indicate other information there was last updated in 2011, and there is no narrative statement to indicate that Mr. Bear actually reported this information to hospital personnel in May of 2012."  (Doc. 18, p. 6); T. 324.  As previously explained, however, the ALJ's interpretation of this evidence is reasonable in light of the deference given to the ALJ's findings of fact.  *See Hunter*, 808 F.3d at 822.

Claimant also argues "the ALJ found that Mr. Bear was not credible due to his work activity after his original alleged onset date despite the fact that Mr. Bear amended his alleged onset date at the time of his hearing in response to concerns about this issue on the part of the ALJ."  The ALJ, however, has a duty to develop and examine the record and was at liberty to identify the reported employment history, including the undocumented 2007 to 2011 employment, as discrediting the plaintiff's subjective pain allegations.  Employment history at close quarters to the

onset date may be helpful to an ALJ, particularly when assessing a claimant who credits his disability to long-standing injuries.

The ALJ's credibility determination is supported by substantial evidence—and valid under both SSR 16-3p and SSR 95-7p—because of Bear's limited treatment history before the DLI.

## CONCLUSION

Mr. Bear has failed to show the ALJ committed reversible error by denying the application for DIB because determining the left shoulder impairment was not a severe impairment before the DLI, giving the DOE's opinion less than substantial weight, and the evaluation of Mr. Bear's credibility were all supported by substantial evidence. The applicable standard of review is well-known. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]. Even if we find the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence.").

Accordingly, it is ORDERED:

1.     The decision of the Commissioner is AFFIRMED and plaintiff's application for Disability Insurance Benefits is DENIED.

2.     The clerk is directed to close the file.

DONE AND ORDERED this 26th day of July, 2017.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**